| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CASE NO. 19-3543 |
| APPELLEE | ) | Consolidated Case No. 19-3540 |
| vs. | ) | |
| | ) | |
| **EDUARDO RIOS VELASQUEZ** | ) | **PETITION FOR PANEL REHEARING AND** |
| APPELLANT | ) | **PETITION FOR REHEARING EN BANC** |
| _____ | ) | of Eduardo Rios Velasquez |

Now comes Appellant Eduardo Rios Velasquez, by and through his CJA attorney, Richard P. Kutuchief, and does petition this Court twofold herein as follows:

1) For En Banc Determination pursuant to FRAP 35 and 6 Cir. R. 35 and other pertinent statutes and support. Mr. Rios Velasquez submits that the panel decision conflicts with a decision of this Court, to wit: *United States v. Acierno,* 579 F.3d 694 (6th Cir. 2009), and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions ; and,

2) For Panel Rehearing pursuant to FRAP 40 and 6 Cir. R. 40 and other pertinent statutes and support, in that Appellant submits the Court has overlooked or misapprehended certain points of law or fact as submitted herein.

## Support for Petition For Rehearing En Banc

Appellant submits with particularity the following point of law or fact sought to be reheard En Banc:

The precedent of *Acierno* requires the Government to prove that Defendant not only had intent that a murder be committed, but also "that the murder was to be committed as consideration for the promise or agreement to pay anything of pecuniary

value." In other words, basic contract law—there must be a mutual agreement. In so stating the standard of proof, this Court relied on and adopted *United States v. Wicklund, 114* 114 F.3d 151, 154 (10th Cir. 1997) and ruled that the consideration element of the statue requires a *quid pro quo* and a promise or an agreement with a **mutual understanding that something of value will be exchanged for committing a murder** (emphasis added):

The murder-for-hire statute requires that the murder or intended murder be committed " as consideration for the receipt of, or as consideration for a **promise or agreement** to pay, anything of pecuniary value...." 18 U.S.C. § 1958(a). We have not addressed directly the consideration element of murder-for-hire, but other circuits have held that the statute requires " a mutual understanding that something of value will be exchanged for committing a murder." *United States v. Wicklund,* **114 F.3d 151**, 154 (10th Cir.1997). " Consideration" in the law is, principally, " [t]he inducement to a contract." BLACK'S LAW DICTIONARY 306 (6th ed.1991).

* * *

(" The court in *University of Chattanooga v. Stansberry,* 9 Tenn.App. 341, 343 (1928), defined consideration as ' either a benefit to the **maker of the promise or a detriment to, or obligation upon, the promise[e].'** " ); *Costanzo v. Nationwide Mut. Ins. Co.,* 161 Ohio App.3d 759, 832 N.E.2d 71, 79 (2005) (" In Ohio, consideration is either a benefit to the promisor or a detriment to the promisee." )The plain meaning of § 1958's " language undeniably contemplates a quid-pro-quo (or at least the promise of such) between the parties to the transaction, the murderer and the solicitor." *United States v. Hernandez,* 141 F.3d 1042, 1057 (11th Cir.1998); …. We agree with our sister circuits and hold that the consideration element of the statute requires a *quid pro quo* between the parties of something of pecuniary value.

There is no evidence of a promise to pay or and agreement.

In his Petition for Rehearing presented herein below, Mr. Rios Velasquez shows that the record does not support that it was him who said that he was going to kill Tyra. In fact, the record shows it is Corder who makes these statements and that argument is

incorporated as a foundation for this determination request here as though fully rewritten.

In its opinion of the within matter, this Court ruled that an agreement or promise could be inferred. Yet there is no agreement shown between the supposed Victor who was going to hire Eduardo, there is no proof of a promise by either, nor was there any money exchanged whatsoever. The Court also states *Document 58-2* .at page 12: Sure enough, the record supports **the possibility** that the murder-for-hire plot was to take place in two stages—the first involving locating Goines' address and the second involving Goines' murder. The possibility is far from proof beyond a reasonable doubt as anything is possible.

This Court ruled (Document 58-2 page 11):

There was also sufficient evidence presented at trial to meet the "pecuniary value" requirement of the murder-for-hire statute. The jury could have reasonably concluded that Velasquez **had an agreement—or intended to form an agreement**—with Victor to kill Goines for money. The jury heard testimony that Velasquez told Cordero on the phone that he would kill Goines. Velasquez does not argue—nor was there evidence indicating—that he had any personal stake in Goines' murder. It was therefore logical for the jury to infer that Velasquez intended to perform the murder in exchange for money, particularly when there was already someone, i.e., "Victor," who was willing to pay for information on Goines' whereabouts. This inference was further supported by Cordero's recorded statements that Velasquez would be compensated for Goines' murder. In one such statement, Cordero surmised that Velasquez would receive "probably more" than $20,000, with the exact amount depending on the method in which Goines was killed. In another instance, Cordero remarked that Velasquez "ain't going to do it for peanuts." Finally, the facts that Velasquez travelled to Goines' residence and purchased tracking and surveillance equipment were further indications that he had an agreement in place to commit the murder or intended to enter one. (Emphasis added).

Hence, this decision now changes the standard that if one "intends to form an agreement" it satisfied the element of pecuniary value exchange. This is not the law

coming into this case. If I intend to represent a client without their agreement, I can not have an attorney client relationship. The principal is the same here.

This decision removes the requirements of proof beyond a reasonable doubt as to a promise to pay or an agreement between Eduardo and Victor as to any *quid pro quo* regarding any murder. This opinion essentially overrules *Acierno.* It changes the standard in a confusing way as to what is required to show a *quid pro quo* and it muddies the clear basic tenants of "consideration" found in Contracts 101 which is fundamental to enforcement, or creation of any agreement.

What this opinion does in it's analysis provides that any talk between any persons about murder without a principal willing to promise pay can equate to a *quid pro quo* — even where there is no evidence of such, let alone any evidence of a promise to pay, an agreement, or any contractual arrangements whatsoever.

This Court must not change the law to allow for "intent to form an agreement to fulfill the statute.

For this reason, Mr. Rios Velasquez does here request a Determination En Banc as to this issue so as to preserve the precedent already established in this Court by the case of *United States v. Acierno*.

## **Support for Petition for Rehearing**

Mr. Rios Velasquez submits that there is error of fact or law in the opinion worthy of bringing to the panel's attention and presents the following in support:

1. **The record does not support that it was Velasquez who said he wanted to kill Tyra and the Court erroneously found the fact to be that such was the statement of Velasquez and not Cordero. This is an error of fact.**

The Court has found that a conspiracy existed between Mr. Cordero and Mr. Rios Velasquez wanting to kill Tyra Goines. In the Court's factual and procedural background in paragraph three on page five, Doc #58-2, page 3, the Court recited the following factual basis finding that Cordero said Velasquez wanted to kill Goines given a vague story about how Goines profited from a drug robbery when her boyfriend Glenn Smith was killed.

The opinion states that Glenn Smith was "purportedly" the brother of Velasquez's drug supplier without any support for this purported statement. In fact, the Court acknowledges that the confidential informant expressed his disbelief of Cordero's story. Cordero then called Velasquez who supposedly said that he and "someone else" were looking for Goines and that a private investigator they had hired was not able to find her.

In the above paragraph of the Court's opinion of this factual basis it states as follows:

> Cordero proceeded to ask Velasquez, "[i]f you find her, what are you going to do[?]".

The Court states that Velasquez responded saying "I'm going to tie her up and get rid of the bitch.". As argued in Appellant Velasquez's Brief, this is not what the record and transcript provides.

In Velasquez's Reply Brief, Argument Three, he provides the actual transcript wording about Cordero calling Velasquez telling him that King can find Tyra. Velasquez is quoted by King as saying "Are you sure he can find them because the PI we hired couldn't even get her, couldn't find her."

Q. When you say PI, what are you referring to?

> A. Private Investigator couldn't find her and he said, "Yeah, he's got it. Don't waste his time," and Cordero goes this to me, (indicating) meaning I'm not supposed to be there for the conversation, don't say anything. And **he (Velasquez)** asked Cordero, "if you find her, what are you going to do, " and **he (Cordero)** said, "I'm going to tie her up and get rid of the bitch." (emphasis added for clarification of thought).

This transcript shows the exchange is clear. The transcript said that "he" asks "Cordero". Cordero would not be asking himself and King did not say he asked Cordero. It said and he, "Velasquez", asked Cordero "if you find her, what are you going to do", and "he", "Cordero" said "I'm going to tie her up and get rid of the bitch." Velasquez did not say he was going to kill Tyra. That is what the record is.

This transcript demonstrates that it is Cordero making these weightless statements not Velasquez. This distinction is important, as it goes to intent as well as being paid regardless of conspiracy as it is impossible for Cordero to kill anyone.

**2. The Court failed to use the standard of proof beyond a reasonable doubt in concluding the jury had foundation of sufficient evidence to find Eduardo guilty of murder-for-hire as there is no proof of payment for any murder**

In the second paragraph of page four, Doc #58-2, page 4, the opinion factual basis finding states that "the drug and murder schemes continued to progress after King met with the Government." The conversation was that Cordero told Velasquez that he wanted $1,500.00 for the information to be split between Cordero and the Informant King. Velasquez had said to have responded that he had to wait for "his man to get back in town" in order to <u>negotiate the price</u>. There is never any negotiation of price here for murder. No one knows why he wanted to find Tyra especially in view of the fact that Tyra testified she was still friends with Leon. There is no evidence for any inference

by the jury. Leo, or "Victor", is a red herring which dots are not connected at all. It is all "surmise."

As stated herein above, *United States v. Acierno* requires a *quid pro quo* between the promisor and the promisee. There is absolutely no evidence that a third party was going to hire Eduardo to kill Tyra. This Court must therefor review "surmise" and "possibility" as a standard of reviewing the trial Court's verdict even in a light most favorable to the Government. There is no promise, there is no agreement.

On July 7, 2017 when King was wired, he and Cordero talked about this and that, "covering both the alleged murder-for-hire and drug trafficking schemes." All of this conversation took place between Cordero and King without any input of Eduardo Rios Velasquez, paragraph one on Document 58-2, page 5. Cordero again describes what supposedly Velasquez "planned to do: Velasquez would be paid by "his man" **presumably** Victor, to find Goines' address and would follow up with an offer to Goines for payment" with more conversation between Cordero and King supposedly what Velasquez is going to do. The following exchange took place:

Cordero: Yeah, cause once he [Velasquez] finds that, he sees . . . he's not going to give that information to him [Victor], he's going to sell it to him

King: That's what I'm saying . . . sell it for what, don't, isn't he the one that's going to take the hit anyway? Isn't he the one taking the hit?

Cordero: That's what I'm saying, we got the bitch

King: I know, what I'm saying is, why the hell he sell it if he's going to be the one taking the hit?

Cordero: That's what I'm saying, he's gonna, he's gonna do that . . . OK

. . .

King: I don't know . . . (Unintelligible) . . . I don't know if this shit is real, if he's gonna, no, I'm just saying, cause, listen, the thing that's confusing me, right, is, he gonna sell it to him and get paid for the hit

7

Cordero: He's gonna, he's gonna, basically, once he got her: "I got her, what you wanna do?"

King: But . . .

Cordero: I got her address, I got everything, you want that, you want to pay for that, or you want to pay for the full service, basically…

King: (Laughing) Now, the full service would be…it is what it is

Cordero: Whatever they gonna, whatever he decides he wants

How is this connected to what Velasquez may or may not do?

When Velasquez received Goines address he went and looked for the residence. Who is promising to pay for this?

On Document 58-2, page 9 of the Opinion the Court analyzes conspiracy to commit murder-for-hire and states that "a defendant is guilty of murder for hire when he by himself or in conspiracy with others "uses the mail or any facility of interstate or foreign commerce with intent that a murder be committed . . . as consideration for a promise or agreement to pay anything of pecuniary value." Citing 18 U.S.C. §1958(a).

The Court supports the finding of murder for hire by finding again that Cordero called Velasquez confirming that it was Velasquez who said he would "tie her up and get rid of the bitch." This finding is not supported by the transcript although it may seem like it says, but it does not say that.

Regardless, intent alone can not convict without a contract to pay and kill.

**3. The testimony of Informant Mark King is not sufficiently connected to Eduardo Velasquez to enable a conspiracy when Velasquez is not aware of the talk between King and Cordero regarding payment and no one is offering to pay**

The record shows it is Cordero who is telling King that Velasquez is going to get paid for this murder. When asked by King how much, Cordero does not even know how much in that it depended on what he was going to do. It is Cordero then goes on to describe how he is going to commit this murder "if he were not in prison".

This is all jail house chatter that does not sufficiently draw Velasquez into this conspiracy as there is nothing that indicates Velasquez knows about this talk between Cordero and King. Without more, all elements can not be proven.

The Decision premise in the Opinion is all based upon the alleged statement that King heard Velasquez state on the phone that "I'm going to tie her up and get rid of the bitch." That is not what Mark King testified to. This argument is presented above and incorporated here as though fully rewritten.

Furthermore this Court has strayed from precedent in the *United States v. Barnett*, 197 F.3d 138 (Fifth Cir. 1999). The evidence in Barnett demonstrated that the defendant assisted his friend who he knew had been hired to perpetrate "some unlawful act" against the victim. There, the evidence did not show that the defendant "knew that the unlawful act was murder." This exactly what the evidence did not show here. There is no evidence that Velasquez "knew that the unlawful act was murder" as talked between Cordero and King. In Paragraph Three of Document 58-2, Page 11, the Court states "in contrast to the facts in Barnett, Velasquez and Cordero repeatedly alluded to Goines' murder and never suggested that she would suffer nonfatal injury." This is simply not supported in the record. The conversation was not between Velasquez and

Cordero, it was between Cordero and the confidential informant whom just as easily could have inferred that he made it all up.

Mr. Rios Velasquez incorporates his argument in the Determination for En Banc as fully rewritten here. It supports the argument that this Court has strayed from the precedent it has long relied upon to meet the "pecuniary value" requirement of the murder-for-hire statute.

This Court sustains the convictions stating that the jury "could have reasonable concluded that Velasquez had an agreement - - **or intended to form an agreement** - - with Victor to kill Goines for money." This is not a standard— whether one "intended to form an agreement." Even if arguendo there was an agreement that he would kill Goines, there is nothing there sufficiently logical for a jury to infer that Velasquez intended to do the murder in exchange for money. Even if there was a thought that Velasquez would do a killing for money, there was nothing whatsoever to demonstrate that there was an agreement to pay money let alone how much money, or who would be paying the money. The fact that Cordero said that Velasquez would be paid is not sufficient to provide for a pecuniary agreement between the person hiring the murder plot to a person who supposedly is involved on the other side of the murder plot, to wit Angelo Cordero.

Furthermore, this Court's opinion states that "sure enough, the record supports the possibility that the murder-for-hire plot was to take place in two stages - - the first involving locating Goines' address and the second involving Goines' murder." This is nowhere supported in the record. How can Co-defendant Cordero support the notion that there is contract to pay when there is no evidence whatsoever of the payer, the

10

requester to kill, evidence that there was going to be a third party paying Velasquez, or any other demonstration that there was an agreement to pay pecuniary interest.

To find that Velasquez had intent to commit the contract murder is not in any way supported by this record even if he did have intent to murder. Indeed, in the last paragraph on Document 58-2, page 12, the opinion rules that even in the absence of an agreement or even an offer to commit murder for hire, it does not foreclose a conviction under §1958, "provided there is a showing of intent on the part of the defendant." Well maybe that is so, but the Court fails to recognize that there must be consideration for a promise or agreement to pay anything of pecuniary value. You can have all the intent that you want, but without an agreement to pay there is no crime of murder-for-hire.

In fact, in the same paragraph just stated, the Court states in the opinion "furthermore, Velasquez's intent to commit the contractual murder is sufficient for a conviction even if Victor himself had no intention of entering into an agreement." This changes precedent of this Court and is improper in conclusion as intent alone can not sustain murder for hire. The Court stated in the first analysis paragraph under II Conspiracy to Commit Murder-For-Hire that a defendant is guilty of murder-for-hire when he uses interstate commence "with intent that a murder be committed . . as consideration for a promise or agreement to pay anything of pecuniary value." There is absolutely no evidence that there is consideration for a promise nor for an agreement to pay Eduardo Rios Velasquez to kill anybody.

Hence this Court has left out the evidentiary support in the record that in any way demonstrates an agreement to pay money to kill Tyra Goines. As such, the Court dwells on intent fails to support the analysis of the other element required, being an agreement

to pay money.  Even if the jury could have reasonably concluded that Victor intended to preform the "full service" of killing after locating Tyra and perhaps there was intent on Velasquez to murder Tyra, there is nothing that demonstrates negotiations with Victor or evidence that Victor was going to pay anything but to locate Goines address for money.  That is well reasonable and logical as to why he may have wanted surveillance equipment.

**4.  In affirming admission of other acts evidence, this Court ruled that "the probative value of this evidence did not outweigh its prejudicial effect."  As such, the Court can not affirm the Trial Court's admission of evidence.**

This ruling in page 18 of the Court's opinion (Doc. 58-2, 09/03/20) is the correct statement of the admission of other acts—the probative value of this evidence did not outweigh its prejudicial effect.  The prejudice is extreme. Clearly, the admission of selling synthetic marijuana and selling kilograms of cocaine are quite different acts.  This argument advance by Mr. Rios Velasquez in his brief is requested review.

Although if may be reasonable to conclude that "evidence that [the defendant] had previously engaged in narcotics trafficking with [his co-conspirator] is highly probative of [the defendant's] intent to enter another drug conspiracy with the same co-conspirator, and to rebut [the defendant's] defense of innocent association" that is not the case in selling synthetic marijuana on pager sent to the prison.

The Court said furthermore, Velasquez's intent to commit the contract murder is sufficient for conviction "even if Victor himself had no intention of entering into such an agreement."  Then where is the contract.  To have a contract you have to have a meeting of the minds.  This Court dwells on intent to commit murder but it avoids the

obligation by the Government to present evidence of a contract beyond a reasonable doubt.

## CONCLUSION

To change the precedent of Murder-For-Hire analysis through this case, this Court will dramatically provide for any type of behavior or talk which contemplates murder hired by another. Such is improper and not supported by the history of this Circuit's decisions.

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Appellant Eduardo Rios Velasquez Requests Determination En Banc and for Reconsideration as submitted herein.

Respectfully submitted,

/s/ *Richard P. Kutuchief*
**RICHARD P. KUTUCHIEF/0025199**
Attorney for Appellant Eduardo Rios Velasquez
𝔗𝔥𝔢 𝔎𝔉𝔞𝔯𝔪
3351 Cormany Road
Coventry Township, Ohio 44319
330.762.1134
justuse@aol.com

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(B)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type limitation of these Rules.

1. Exclusive of the exempted portions in FRAP 32(a)(7)(B)(C)(i) and (iii), the relevant portions of the foregoing brief contains no more than 3,773 words in its entirety.
2. The brief has been prepared in 12 point Times New Roman typeface using Apple Pages.
3. The undersigned understand a material misrepresentation in completing this certificated of the FRAP 32(a)(7)(B)(C) and Sixth Circuit Rule 32(a) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

## Proof of Service

I hereby certify that on this 17th day of September, 2020, a copy of the foregoing was filed electronically. Parties may access this filing through the court's system. Notice of this filing will be sent by operation of the court's electronic filing system.

*s/ Richard P. Kutuchief*
**RICHARD P. KUTUCHIEF/0025199**